# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

AARON SLEDGE,

    Plaintiff

v.

CHUCK ALLEN, et. al.

    Defendants

Case No.: 3:19-cv-00181-MMD -WGC

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF No. 7

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' Motion to Dismiss. (ECF Nos. 7, 7-1 to 7-15.) Plaintiff filed a response. (ECF No. 12.)[1] Defendants filed a reply. (ECF No. 17.) Defendant Allen filed a joinder to the motion to dismiss. (ECF No. 20.)

After a thorough review, it is recommended that Defendants' motion be granted.

## I. BACKGROUND

Plaintiff is currently an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983; however, the actions giving rise to his complaint took place while he was a pretrial detainee at the Washoe County Detention Facility (WCDF). (Compl., ECF No. 4.) Defendants are Washoe County Commissioners Jeanne Herman, Marsha Berkbigler, Bob Lucey, Vaughn Hartung, and Kitty Jung, as well as former Washoe County Sheriff Chuck Allen.

---

[1] Plaintiff filed a second response (ECF No. 15) which is identical to the first filed response.

1   The court screened Plaintiff's complaint and allowed him to proceed with a Sixth

2   Amendment right to self-representation claim as well as a Fourteenth Amendment equal

3   protection claim. The claims are based on allegations that while he was a pretrial detainee

4   representing himself in his criminal trial he was unable to file a timely motion for mistrial

5   because WCDF had no legal materials, and WCDF provided federal pretrial detainees on ICE

6   holds access to a mobile information station with a law library that was not accessible to state

7   pretrial detainees. (Screening Order, ECF No. 3.)

8   Defendants move to dismiss Plaintiff's complaint, arguing: (1) it is *Heck* barred at this

9   time; (2) Plaintiff was in fact represented by counsel throughout his underlying criminal

10   proceeding; and (3) the County Commissioners did not participate in the alleged constitutional

11   violations.

12   ## II. MOTION TO DISMISS OR MOTION FOR SUMMARY JUDGMENT

13   Preliminarily, Defendants' support their motion to dismiss with various exhibits, which

14   are records from Plaintiff's underlying criminal proceeding in the Second Judicial District Court

15   of the State of Nevada, in and for the County of Washoe, case number CR17-0445, including

16   some post-conviction filings, for the purpose of demonstrating that Plaintiff was in fact

17   represented by counsel throughout his underlying criminal proceeding. Defendants ask the court

18   to take judicial notice of certain facts relative to Plaintiff's underlying criminal proceeding that

19   have a bearing on this civil rights action.

20   Plaintiff argues that the court cannot consider the documents attached to the motion to

21   dismiss unless the court converts the motion to one for summary judgment.

22   As a general rule, the court may not consider any material beyond the pleadings in ruling

23   on a motion to dismiss for failure to state a claim without converting it into a motion for

summary judgment, where "both parties must have the opportunity 'to present all the material that is pertinent to the motion.'" *See Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 998 (9th Cir. 2018) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)).

There are some exceptions to the general rule that the court may not consider documents extraneous to the pleadings in evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), including: exhibits that are attached to a pleading; matters that are properly subject to judicial notice; and, the incorporation by reference doctrine. *See Khoja,,* 899 F.3d at 988 ("There are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201."); *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (per curiam) (the court will "consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.").

Federal Rule of Evidence 201 allows the court to take notice of an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2). "A court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." *Lee,* 250 F.3d at 689 (quotation marks and citation omitted). "But a court cannot take judicial notice of disputed facts contained in such public records." *Khoja,* 899 F.3d at 999 (citing *Lee*, 250 F.3d at 689). "Just because [a] document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Id.*

Courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *United*

1 *States ex. rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir.

2 1992) (citations omitted).

3        Defendants ask the court to take judicial notice of certain facts relative to Plaintiff's

4 underlying criminal proceeding that have a bearing on this civil rights action, including the

5 following:

6 (1) Plaintiff was represented by Deputy Public Defender Joseph Goodnight in all matters leading

7 up to post-trial in criminal case CR17-0445 (citing minutes from his arraignment on April 5,

8 2017 at ECF No. 7-1; minutes from pretrial motions hearing on May 19, 2017 at ECF No. 7-2;

9 minutes from the jury trial on May 22 and 23, 2017 at ECF No. 7-3; application for setting on

10 July 5, 2017 at ECF No. 7-4; notice to withdraw attorney of record filed on July 17, 2017, where

11 Plaintiff sought to have Mr. Goodnight removed as his attorney of record at ECF No. 7-5);

12 (2) Plaintiff was convicted by a jury of invasion of the home, a felony (verdict from the Second

13 Judicial District Court in and for the County of Washoe, State of Nevada, Case No. CR17-0445

14 at ECF No. 7-6);

15 (3) Mr. Goodnight appeared on Plaintiff's behalf at an August 2, 2017 status hearing where he

16 advised the court of a disagreement with counsel; Mr. Goodnight was relieved of representation;

17 and, the Washoe County Alternate Public Defender's Office was appointed to represent Plaintiff

18 (minutes from status hearing at ECF No. 7-7);

19 (4) after that hearing, on August 4, 2017, Plaintiff filed a motion for mistrial, asserting that a

20 juror had misused a laptop during jury deliberations (motion at ECF No. 7-8);

21 (5) at an August 16, 2017 status hearing, Plaintiff was represented by Ian Silverberg, Deputy

22 Alternate Public Defender, and Mr. Silverberg filed a supplement to the motion for new trial on

23 September 6, 2017 (ECF No. 7-9);

(6) On December 13, 2017, Plaintiff was sentenced as a habitual criminal to a term of 10 to 25 years imprisonment pursuant to a judgment of conviction filed on December 14, 2017, entered *nunc pro tunc* to December 13, 2017 (ECF No. 7-10);

(7) Plaintiff was represented by Mr. Silverberg at the sentencing (minutes of sentencing at ECF No. 7-11);

(8) Mr. Silverberg filed a notice of appeal on January 4, 2018 (ECF No. 7-12);

(9) Counsel was appointed on Plaintiff's behalf for the appeal, and Carolyn Tanner, Esq., appeared on Plaintiff's behalf in mid-January 2018 (notice of appearance at ECF No. 7-13);

(10) Plaintiff attacked his conviction on direct appeal, and the Nevada Court of Appeals affirmed his conviction on January 25, 2019 (ECF No. 7-14).[2]

Plaintiff states that he disputes every assertion made from page 3 lines 24-26, pages 4 and 5, and page 6 at lines 1-7 "because these records are not usable in a motion to dismiss determination by a court" (ECF No. 12 at 5); however, Plaintiff does not provide a substantive explanation of how he disputes these facts; he merely argues that they are not properly considered by the court. Plaintiff never disputes that he was in fact represented by counsel throughout his criminal proceeding. Instead, he argues that while he might have been represented by an attorney, this does not mean that the appointed attorney was reliable and competent and provided him with effective assistance. (ECF No. 12 at 4.) Since there is no dispute that Plaintiff was represented by counsel through his criminal proceeding and direct appeal, Defendants' request that the court take judicial notice of these facts should be granted.

---

[2] Defendants also assert that Plaintiff then filed a petition for writ of habeas corpus on May 31, 2019, which remains pending at this time, but they do not provide the petition or a case number.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b) contemplates the filing of a motion to dismiss for the failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). In reviewing the complaint under this standard, the court must accept as true the allegations of the complaint, *Hosp. Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 740 (1976), construe the pleadings in the light most favorable to plaintiff, and resolve all doubts in the plaintiff's favor, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). This does not apply, however, to "legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (U.S. 2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). "While legal conclusions can provide the framework for a complaint, they must be supported by factual allegations." *Id*. at 679.

Allegations in pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers, and must be liberally construed. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (*per curiam*); *Hamilton v. Brown*, 630 F.3d 889, 893 (9th Cir. 2011).

Under Federal Rule of Civil Procedure 8(a), "a claim for relief must contain...a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2).  The Supreme Court has found that at a minimum, a plaintiff should state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Iqbal*, 556 U.S. at 678.

1    The complaint need not contain detailed factual allegations, but it must contain more than

2    a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also*

3    *Iqbal*, 556 U.S. at 678. It must contain factual allegations sufficient to "raise a right to relief

4    above the speculative level." *Twombly,* 550 U.S. at 555. "The pleading must contain something

5    more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of

6    action." *Id*. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at 235-36

7    (3d ed. 2004)).

8    The Rule 8(a) notice pleading standard requires the plaintiff to "give the defendant fair

9    notice of what the...claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

10   (internal quotation marks and citation omitted).  "A claim has facial plausibility when the

11   plaintiff pleads factual content that allows the court to draw the reasonable inference that the

12   defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

13   "Plausibility" is "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

14   (citation omitted). "Determining whether a complaint states a plausible claim for relief" is "a

15   context-specific task that requires the reviewing court to draw on its judicial experience and

16   common sense." *Id*.  at 679 (citation omitted).  Allegations can be deemed "implausible" if there

17   are "obvious alternative explanation[s]" for the facts alleged. *Id*. at 682.

18   **IV. DISCUSSION**

19   **A. Sixth Amendment Right to Self-Representation**

20   In screening the complaint, District Judge Du construed Plaintiff's allegations as asserting

21   a Sixth Amendment claim for the right to self-representation in a criminal case rather than a

22   denial of access to the courts. He was also allowed to proceed with a claim for denial of his right

23   to equal protection of the laws under the Fourteenth Amendment. (ECF No. 3.)

With respect to the Sixth Amendment claim, District Judge Du noted that in *Faretta v. California*, 422 U.S. 806 (1975), the United States Supreme Court recognized a criminal defendant's Sixth Amendment right to self-representation. The Ninth Circuit has held that "the right to self-representation necessarily includes and is premised upon the right of the defendant to prepare a defense." *Taylor v. List*, 880 F.2d 1040, 1047 (9th Cir. 1989). "An incarcerated defendant may not meaningfully exercise his right to represent himself without access to law books, witnesses, or other tools to prepare a defense." *Id.* The court found that Plaintiff stated a colorable Sixth Amendment claim based on allegations that while representing himself he was unable to conduct any legal research during his criminal trial because WCDF did not have a library. Judge Du did note that while Plaintiff alleged that he was representing himself during his criminal trial, exhibits to his complaint indicated that at some point he had appointed counsel from both the Washoe County Public Defender's Office and the Washoe County Alternate Public Defender's Office. (ECF No. 3 at 5 n. 2.)

Plaintiff's Sixth Amendment claim is flatly contradicted by the records from his criminal proceeding which show he was represented counsel throughout his underlying criminal proceeding. "[A] defendant who is represented by counsel has no constitutional right of access to legal materials." *United States v. Robinson*, 913 F.2d 712, 717 (9th Cir. 1990) (citing *United States v. Wilson*, 690 F.2d 1267, 1271 (9th Cir. 1982), *cert. denied*, 464 U.S. 867 (1983)). "[T]he [S]ixth [A]mendment is satisfied by the offer of professional representation alone." *Id.* Therefore, Plaintiff's claim that he was denied his Sixth Amendment right to self-representation should be dismissed.

Similarly, in *United States v. Wilson*, a federal criminal defendant was initially denied his request to represent himself. *U.S. v. Wilson*, 690 F.2d 1267, 1270 (9th Cir. 1983). At the time of

trial, he was asked if he wanted to represent himself, and he responded that he did not because he had no access to a law library to prepare his defense. *Id*. The Ninth Circuit acknowledged Wilson had a federal statutory and Sixth Amendment right to waive counsel and represent himself. *Id*. (citing 28 U.S.C. § 1654; *Faretta v. California*, 422 U.S. 806 (1975)). Wilson argued that the due process clause, which the Supreme Court held in *Bounds v. Smith*, 430 U.S. 817, 828 (1977), required some form of meaningful access to the courts, when combined with the Sixth Amendment right to self-representation, required library access to prepare a meaningful defense. *Id*. at 1271. The Ninth Circuit stated that the Supreme Court was careful to point out in *Bounds* that access to a law library was "one of a number of constitutionally permissible means of achieving that objective." *Id.* (citing *Bounds*, 430 U.S. at 830).

The Ninth Circuit held that the "[a]vailability of legal assistance at government expense, if required, is a constitutionally permissible means of access." *Id.* When that access is provided, as it was to Wilson, the "inmate may not reject the method provided and insist on an avenue of his or her choosing." *Id.* "Wilson rejected that offer of representation and insisted throughout that he be permitted to personally conduct his own research, even though the local facility in which he was being held had no library." *Id.* Wilson never asked his court-appointed attorney or anyone else to perform research for him, and at the time of trial, he agreed to have his court-appointed counsel represent him. *Id*. As a result, the court could not "say that Wilson was deprived of all avenues of meaningful access to the court." *Id*.

Here, Plaintiff should not be given leave to amend to assert a claim for denial of access to the courts because he was indisputably represented by counsel throughout his criminal proceeding.

It appears that what Plaintiff is actually trying to assert is a Sixth Amendment ineffective assistance of counsel claim; however, such a claim must be raised in direct appeals, post-conviction, or habeas proceedings, and not in a section 1983 action. Claims for ineffective assistance of counsel are not recognized under section 1983, despite the statute's "literal applicability" to the Sixth Amendment, because specific appellate and habeas statutes apply. *See Nelson v. Campbell*, 541 U.S. 637, 643 (2004). Nevada state prisoners must initially seek post-conviction relief in state court. *See Morgano v. Smith*, 879 P.2d 735 n. 3, 110 Nev. 1025 (1994) (where a claim is "based primarily on the ineffective assistance of counsel, post-conviction proceedings, rather than civil proceedings, provide such litigants a more appropriate forum to present their claims"). Nevada law provides that a claim for ineffective assistance of counsel must first be raised on direct appeal of a conviction. See Nev. Rev. Stat. 34.810(1)(b). Nevada also provides habeas relief for ineffective assistance of counsel claims. *See* Nev. Rev. Stat. 34.720, *et. seq.*. Where a state habeas remedy is available, a plaintiff cannot seek federal habeas relief until he has first sought and been denied habeas relief in state courts. *Preiser v. Rodriguez*, 411 U.S. 475, 477 (1973); 28 U.S.C. §§ 2241-66.

In light of the court's conclusions, it need not reach Defendants' arguments regarding *Heck* and personal participation with respect to the Sixth Amendment claim.

**B. Equal Protection**

Plaintiff's equal protection claim is based on allegations that jail officials treated federal prisoners differently than Plaintiff, a state pretrial detainee, because he claims that federal pretrial detainees held at WCDF on ICE holds had access to a mobile information station that included a law library, but the same information was not provided to state pretrial detainees.

Defendants argue that because Plaintiff was represented by counsel throughout the

criminal process, there was no need for accessing a law library. They also argue that Plaintiff's claim is *Heck* barred, and that the Washoe County Commissioner's did not personally participate in the alleged constitutional violation.

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that "in order to recover damages for [an] allegedly unconstitutional conviction of imprisonment, or for other harm caused by action whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Id.* at 486-87. "A claim for damages bearing that relationship to a conviction or sentence that has not been … invalidated is not cognizable under § 1983." *Id.* at 487. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of the duration of his confinement, if it would, the claim must be dismissed unless the plaintiff can demonstrate the period of confinement has already been invalidated.

A finding that Defendants intentionally treated Plaintiff differently from the inmates on ICE holds who were able to access a database with a law library would not imply the invalidity of Plaintiff's conviction. Therefore, *Heck* does not apply to the equal protection claim.

The Washoe County Commissioners argue that they should be dismissed from the equal protection claim because they did not personally participate in the alleged constitutional violation as the only allegation against them is that they were in charge of funding for the WCDF. Allen filed a joinder to the motion to dismiss, but there is no personal participation argument made on

behalf of Allen; therefore, the court's analysis will focus only on the Washoe County

Commissioner defendants.

"42 U.S.C. § 1983 creates a cause of action against a person who, acting under color of state law, deprives another of rights guaranteed under the Constitution." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation[.]" *Id.* (citations omitted).

In addition, under section 1983, supervisors are not liable for the actions of their subordinates under a theory of vicarious liability. *Snow v. McDaniel*, 681 F.3d 978, 989 (9th Cir. 2012), overruled on other grounds by *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (citation omitted). A supervisor can only be liable if he or she was personally involved in the constitutional deprivation or there is sufficient causal connection between the supervisor's conduct and the constitutional violation. *Id.* (citation omitted). The causal connection can include: (1) the supervisor's own culpable action or inaction in the training, supervision, or control of a subordinate; (2) the supervisor's acquiescence in the constitutional deprivation; (3) conduct that shows a reckless or callous indifference to the rights of others; (4) implementation of a policy so deficient that the policy itself is a repudiation of constitutional rights and the moving force behind the violation. *See Lemire v. Cal. Dep't of Corr.*, 726 F.3d 1062, 1085 (9th Cir. 2013); *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013).

Plaintiff alleges that while at WCDF his inquiry kites were "shunted off" to Washoe Legal Services, and the policy "does omit from its budgetary categories for the Washoe County Public Defender's Office for the purpose of providing access of detainees to statutes, digests, compilations, pro-per packets to criminal court actions available to defendants, nor any other list

12

of notices of the existence of such defensive actions and procedures necessary to provide

meaningful opportunity to bring such affirmative defenses to the court[.]" (ECF No. 4 at 7.) That

allegations comes under Count III, and Plaintiff's claim for access to the courts. The court has

concluded that because Plaintiff was represented to counsel, he does not state a claim to access to

the courts. In his claim concerning the data base accessible to federal ICE hold detainees,

Plaintiff alleges that he became privy to this system while he was a porter at WCDF, and a

sergeant said he would look into Plaintiff gaining access to the system, but was unsuccessful.

There are no allegations that the Washoe County Commissioner defendants had any involvement

in this system, and the vague allegation regarding the budget is far too tenuous to subject them to

liability under section 1983. Therefore, the Washoe County Commissioner defendants should be

dismissed because there are insufficient allegations that they personally participated in the

alleged constitutional violation.

Finally, the court will address Defendants' argument (applicable to all Defendants) that

Plaintiff cannot argue he was treated differently than similarly situated inmates because he was

represented by counsel and so did not have a need to access a law library.

Plaintiff's claim is premised on the allegation that other inmates were provided access to

a law library while he was not. The facts which the court recommends taking judicial notice of

demonstrate that Plaintiff was represented by counsel during the time period at issue, and

therefore, he had access to legal research through his attorneys, and meaningful access to the

courts, and so he was not denied access to legal research outlets in comparison to the federal ICE

hold inmates. *See United States v. Robinson,* 913 F.2d 712 (9th Cir. 1990); *U.S. v. Wilson*, 690

F.2d 1267, 1270 (9th Cir. 1983). Since Plaintiff was represented by counsel and had access to

legal research materials,  his equal protection claim should also be dismissed.

For these reasons, Defendants' Motion to Dismiss should be granted. Since, leave to amend would be futile, the dismissal should be with prejudice.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order: **GRANTING** Defendants' request for judicial notice and **GRANTING** Defendants' Motion to Dismiss (ECF No. 7) and dismissing this action with prejudice.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: June 29, 2020

_____
William G. Cobb
United States Magistrate Judge

14